No. 15,543.

WEST END IRRIGATION COMPANY ET AL. *v.* GARVEY, EXECUTOR ET AL.

(184 P. [2d] 476)

Decided August 18, 1947.

Messrs. Moynihan-Hughes-Sherman, Messrs. Stivers & Stivers, for plaintiffs in error.

Mr. Guy V. Sternberg, Mr. Benjamin Griffith, for defendants in error.

Mr. HARRY S. SILVERSTEIN, Mr. HARRY S. SILVERSTEIN, JR., amici curiae.

MR. JUSTICE STONE delivered the opinion of the court.

THIS is an action to establish priority of right to use of water and to enjoin diversion. The parties appeared in reverse order in the trial court.

Rock Creek rises in Utah, flows thence into Colorado and then returns to Utah. Plaintiffs' ditches, the Rock Creek ditch No. 1 and the Miller ditch, divert water from the stream in Colorado, both diversion and use in irrigation being in District 63 therein. Defendants' ditches divert water from tributaries of the stream in Utah and convey it to District 61 in Colorado for irrigation of lands therein. Plaintiffs pleaded prior diversion and the adjudicated priorities of water rights to their ditches entered in proceedings for such adjudication instituted pursuant to the Colorado statutes providing therefor. Defendants denied plaintiffs' prior diversion, and pleaded as further defenses adverse user for more than fifty years, and abandonment, laches and fraud on the part of plaintiffs in obtaining their decrees. On motion of plaintiffs these special defenses were stricken and at the trial the court received in evidence, over the objection of defendants, certified copy of the decree entered in 1926 in the statutory proceeding for the adjudication of water priorities in District 63 awarding priority number one to plaintiffs' Rock Creek ditch, and held that the court was bound by that decree, that it conclusively established the priorities of that ditch as of its date and that any evidence as to abandonment or adverse user must be limited to a time subsequent to 1926. The plaintiffs' Miller ditch priorities, having been awarded by decree entered in a supplementary proceeding within four years prior to the commencement of this

action, were held not conclusive, and the court found that defendants' water rights were prior and superior to those of the Miller ditch. The one question requiring our determination on this review is that pertaining to the ruling of the trial court to the effect that the decree in the adjudication proceeding awarding priority to plaintiffs' Rock Creek ditch, was conclusive as to the date and amount of its priority and not subject to attack on the ground of abandonment or adverse user prior to the date of its entry in 1926.

■ ■ This ruling was based on our statute, which then read as follows: "After the lapse of four years from the time of rendering a final decree, in any water district, all parties whose interests are thereby affected shall be deemed and held to have acquiesced in the same, except in case of suits before then brought, and thereafter all persons shall be forever barred from setting up any claim to priority of rights to water for irrigation in such water district adverse or contrary to the effect of such decree." '35 C.S.A., chapter 90, section 183; since recodified, Session Laws of 1943, chapter 190, section 17. The bar set up by this statute is not strictly that of res judicata, but one of limitation. Since the state may enact statutes reasonably limiting attacks on title to property within its borders, this statute is controlling as against all nonparticipating claimants of water diverting from the same stream in other water districts within the state for use therein. *O'Neil v. Northern Colo. Irr. Co.*, 242 U.S. 20, 37 Sup. Ct. 7, 61 L. Ed. 123; *Ft. Lyon Canal Co. v. National Sugar Mfg. Co.*, 68 Colo. 36, 189 Pac. 252. After the expiration of this four-year period, a decree within the purview of the statute may not be attacked except on the ground that it was procured by fraud.

■ However, the decree can speak only as to matters within the jurisdiction of the court, and where the court in such a statutory proceeding attempts to determine matters beyond its competence, its decree, as to such

matters, is not conclusive. "If the court lacks jurisdiction to render, or exceeds its jurisdiction in rendering, the particular judgment in the particular case, such judgment is subject to collateral attack, even though the court had jurisdiction of the parties and of the subject matter." *People ex rel. v. Burke,* 72 Colo. 486, 212 Pac. 837. So where the court by its decree attempted to adjudicate the ownership of the water, it was held that, "In so far as this decree purports to settle and fix relative rights of individual users and consumers of water through said ditch, it is ineffectual." *Rollins v. Fearnley,* 45 Colo. 319, 101 Pac. 345. And, to the extent a decree is beyond the authority of the court, it cannot be made valid by any rule of res judicata or any statutes of limitation. It is no more effectual after four years, than before.

Plaintiffs, in their complaint now before us, alleged that defendants had appropriated their water rights in the state of Utah. Therefore, the court had no authority in the adjudication proceeding to determine the priority of defendants' appropriation. That issue was not before the court and was beyond its competence. The statute setting up our in rem adjudication procedure by its very terms does not comprehend the inclusion of ditches whose points of diversion are outside the state. Jurisdiction is given only of questions "concerning the priority of appropriations" between ditches "drawing water from the same stream or its tributaries within the same water district." Under a subsequent amendment, appropriators in other water districts may now appear and become parties. There is no suggested jurisdiction, even in the amendment, over ditches "drawing water" in another state.

Again, adjudication of the priorities of ditches diverting water outside the state would not be within the purview of the statutory proceedings. The purpose of those proceedings is to furnish the basis for division of the waters of the stream among the several ditches

diverting therefrom through control of their headgates by the public water officials, "to secure the orderly distribution of water for irrigation purposes, and to this end they provide a system of procedure for determining the priorities of rights as between carriers." *Combs v. Farmers' High Line Canal & R. Co.*, 38 Colo. 420, 88 Pac. 396. That purpose patently could not include regulation of a headgate in the state of Utah where the point of diversion is beyond the control of the Colorado court or the Colorado water officials. As our court speaking through Campbell, C. J., has declared: "These sections provide for an adjudication of priorities for ditches drawing water for irrigation from the same stream or its tributaries within the same water districts. * * * We cannot presume that the general assembly intended to enact a law to operate beyond the territorial limits of the state. * * * It is not to be supposed that the state was legislating for the reclamation or irrigation of lands beyond its boundaries, or making provisions by the way of police regulations (which we have held these statutes, in some measure, to be) over a territory beyond its jurisdiction." *Lamson v. Vailes*, 27 Colo. 201, 61 Pac. 231. While this was spoken concerning a ditch diverting water within the state for irrigation of lands without the state, it applies equally to ditches diverting without, for use within, the state.

■ Had our legislature attempted to make provision for the adjudication of rights or priorities of ditches diverting water outside the boundaries of the state it would have overreached its authority and any adjudication thereunder would be void. "The power to enact such laws [water adjudication statutes] comes within the police power of the State." 3 Kinney on Irrigation and Water Rights (2d ed.), p. 2842. "Each state has the power, either by legislative enactment or by court decision, to adopt such a rule governing the waters flowing within its boundaries as it sees fit." 3 Kinney on Irrigation and Water Rights (2d ed.), p. 2421, §1338. Water

statutes have no extraterritorial effect. *Willey v. Decker*, 11 Wyo. 496, 73 Pac. 210; *Lindsey v. McClure*, 136 F. (2d) 65.

■■ The situs of a water right acquired by appropriation is not the place of use, but the place of diversion. "But the establishment of the validity of rights, or decrees in rem, as distinguished from personal relief, or decrees in personam, can be made only in the state where the water right has its situs. .The situs of a riparian right is where the riparian land lies. The situs of a right by appropriation would seem to be where the point of diversion lies, that being where the appropriator has a right to receive the usufruct of the natural resource." Wiel on Water Rights (3d ed.), vol. 1, p. 370, §344. Its situs for the purpose of taxation is not controlling. *Kendrick v. Twin Lakes R. Co.*, 58 Colo. 281, 144 Pac. 884. Water in possession is personal property; the right to divert water from a stream is an interest in real estate. Defendants' right to divert water was in Utah and constituted an interest in real estate in Utah. It was not this right to divert, but only the actual water previously diverted in Utah which was brought within the state of Colorado and became subject to the jurisdiction of our courts. And our Colorado statutory proceeding for the adjudication of water rights is concerned, not with the title to the water already diverted from the stream, but rather with the right to divert water therefrom.

In *Turley v. Furman*, 16 N.M. 253, 114 Pac. 278, it was held that the statute giving the territorial engineer general supervision of the waters of the territory and of the measurement, appropriation, and distribution thereof did not afford him jurisdiction to grant a license for the appropriation of water for the irrigation of lands in New Mexico from a stream flowing from Colorado into New Mexico where the water was to be diverted from the stream in Colorado and come into New Mexico through an artificial ditch. In *Weiland v. Pioneer Irr. Co.*, 259

U.S. 498, 42 Sup. Ct. 568, 66 L. Ed. 1027, where appellee's ditch diverted water in Colorado which was used in the irrigation of lands in Nebraska and was decreed a water right by the federal court, with injunction against interference therewith by Colorado officials, the court said: "The decree appealed from necessarily rested, not upon Colorado laws or decisions which attempted to deny the asserted right to the use of the water in Nebraska, nor upon Nebraska laws or decisions which could not be effective in Colorado, but upon rights secured to the appellee by the Constitution of the United States." As in that case, the laws and decisions of Nebraska where the water was used in irrigation could not be effective in Colorado where the water was diverted, so in the present one, the laws and decisions of Colorado, where the water is used in irrigation, cannot be effective in Utah where the water is diverted. If not so effective, then the Colorado statutes of limitation and the Colorado statutory proceedings cannot control or affect defendants' water rights.

If the Colorado court in an adjudication proceeding could not adjudicate the priorities of defendants' ditch for the reason that its point of diversion was located in Utah, would that limit the right of the court to make decisive adjudication of the priorities of plaintiffs' ditch which diverted water from the same stream in the state of Colorado? As to all other ditches diverting water within Colorado for use in the irrigation of lands in Colorado the decree in the adjudication proceeding was conclusive. If titles to water rights were separate and independent like those to lands, then such a decree, as to a Colorado title, would be conclusive as to all the world. But titles to water rights are not separate and independent; they are relative and dependent. In the adjudication of a water right the vital concern is not the date of priority of the individual ditch, but the relative priorities of the several ditches. A water right may be deprived of value just as effectively by antedating the

priority of a junior diversion, as by postdating its own. In the determination of the priorities belonging to defendants' ditch the dates and amount of priorities of plaintiff's ditches are as necessary and controlling elements of proof as are the dates and amounts of its own priorities, and to say that the decree in the Colorado adjudication proceeding as to plaintiffs' ditch is conclusive in determining the priority of defendants' Utah diversion is to say that the Colorado court in the adjudication proceeding had jurisdiction to determine a necessary and controlling issue as to defendants' Utah title in a proceeding in which the owners of defendants' ditch were not parties and in which the appropriation rights of defendants' ditch could not have been adjudicated. Such jurisdiction it did not have.

Accordingly, the judgment of the court below is reversed, insofar as it awards priority to plaintiffs' Rock Creek Ditch No. 1 in the amount and as of date as awarded to it in the adjudication proceeding by decree of January 15, 1926, and determines such priority to be conclusively established by said decree as senior in point of time to any water rights of defendants or of intervener, and the cause is remanded for further proceedings consistent with the views herein announced.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE HILLIARD and MR. JUSTICE LUXFORD dissent.